UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
SAMUEL JOHNSON, in his individual : 
capacity and JILL JOHNSON, in her :    Case No. 3:22-cv-00295
individual capacity, :
                            :    District Judge William L. Campbell, Jr.
           Plaintiffs, :    Magistrate Judge Barbara D. Holmes
                            :
v. :
                            :
KATHY GRIFFIN, in her individual capacity, :
                            :
           Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT FOR LACK OF
PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM, AND IN
SUPPORT OF TENNESSEE PUBLIC PARTICIPATION ACT PETITION**

GREENBERG TRAURIG, LLP
Michael J. Grygiel
Cynthia E. Neidl
54 State Street, 6th Floor
Albany, New York 12207
Tel: (518) 689-1400
Fax: (518) 689-1499
grygielm@gtlaw.com
neidlc@gtlaw.com

GREENBERG TRAURIG, LLP
Adam Siegler
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel: (310) 586-7700
Fax: (310) 586 7800
sieglera@gtlaw.com

WALLER LANSDEN DORTCH & DAVIS, LLP
Robb Harvey (TN Bar No. 01159)
511 Union Street, Suite 2700
Nashville, TN 37219
Tel: (615) 850-8859
Fax: (615) 244-6804
robb.harvey@wallerlaw.com

*Attorneys for Defendant Kathy Griffin*

(*Pro hac vice applications to be submitted.*)

Defendant Kathy Griffin ("Ms. Griffin") respectfully submits this memorandum of law in support of her motion to dismiss the Complaint, filed by Plaintiffs Samuel and Jill Johnson, pursuant to Fed. R. Civ. P. 12(b)(2), or alternatively, 12(b)(6). Defendant also seeks dismissal pursuant to the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. §§ 20-17-101 *et seq.*

## PRELIMINARY STATEMENT

This case tests a core feature of our democracy: the ability to participate in debate on a public issue without fear of punishment under state tort law. It arises out of a controversial and widely publicized incident in which Plaintiff Samuel Johnson, a local health care executive, berated a gay high school student who was taking prom pictures at the Harpeth Hotel in Franklin, Tennessee, early on a Saturday evening. In an attempt to stifle protected speech on a matter of legitimate public concern, Plaintiffs seek to impose tort liability on Ms. Griffin for statements she made on Twitter calling out Mr. Johnson's conduct. The First Amendment prohibits them from doing so. Thus, whatever tort theory Plaintiffs attempt to rely on, the Complaint fails to state a viable claim.

*First*, even before reaching the constitutional merits of Plaintiffs' claims, their Complaint should be dismissed for lack of personal jurisdiction. That Ms. Griffin, a California resident, published comments accessible to anyone who uses Twitter does not give Plaintiffs jurisdictional recourse in this District to complain about her statements. The Constitution's Due Process clause does not permit this Court to exercise personal jurisdiction based upon Ms. Griffin's out-of-state expressive activity. As numerous courts have held, the use of a social media platform to communicate information, absent more, is insufficient to establish personal jurisdiction in any forum where an online statement allegedly injures someone.

*Second*, and in the alternative, the Complaint should be dismissed for failure to state a claim. Plaintiffs challenge speech protected by the First Amendment, and they are precluded from

asserting any libel or other speech-based claim. Therefore, Plaintiffs attempt to plead around the First Amendment, asserting a grab-bag of tort claims centered on their accusation that Ms. Griffin violated Tennessee criminal statutes for harassment and stalking. (Compl. ¶¶ 105, 114) Plaintiffs conveniently overlook the fact that the plain language of these statutes demonstrates that they are inapplicable to Ms. Griffin's Twitter posts — *i.e.*, speech *to the public*. These laws only apply to narrowly defined, egregious conduct *personally directed to the complainant*. The Complaint itself makes clear that Ms. Griffin never spoke to, addressed, contacted, or communicated with Plaintiffs in any way. Rather, she simply stated her personal views on a matter of public concern in a public forum. The fact that Ms. Griffin added her voice to public discourse on social media — Mr. Johnson's behavior as captured on a Video Clip (*id.* ¶ 3) of the incident being the subject of intensive news coverage — cannot be labeled as "doxing," "harassment," or "stalking."

Plaintiffs improperly attempt to insert accusations of criminal conduct in this civil case. The only "crime" that Ms. Griffin is alleged to have committed here is using Twitter to communicate her opinion to a public audience. If that is considered sufficient to transmogrify her commentary into a criminal violation under Tennessee law, it would essentially turn every social media user in the country into a potential criminal in Tennessee. While some might disagree with Ms. Griffin's commentary, the various torts alleged in the Complaint collide with the established principle that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)).

In their Complaint, Plaintiffs repeatedly complain about the alleged reputational harm they attribute to Ms. Griffin's tweets. (*See* Compl. ¶¶ 17, 22, 99-100, 113, 126, 149, 156, 158, 165). Those assertions, which are the gravamen of the Complaint, expose this lawsuit as a transparent (some might say cynical) attempt to evade the First Amendment defenses and limitations that

govern a defamation claim by the simple expedient of asserting alternative tort theories of recovery — presumably because the Video Clip shows what it shows and speaks for itself (and therefore cannot be proven false). Ms. Griffin's opinions are constitutionally protected. "Motives," whether perceived or real, do not amount to torts.[1] Constitutional protection for public affairs commentary is neither as casual, marginal, or dispensable as Plaintiffs would have it.

The Complaint should be dismissed for lack of personal jurisdiction, or alternatively, for failure to state a cause of action. In addition, the Court should dismiss the case under the TPPA.

## STATEMENT OF FACTS

### A.  The Parties.

Plaintiffs Samuel and Jill Johnson are residents of Tennessee. (Compl. ¶¶ 33-34) Defendant Kathy Griffin is a resident of California. (*Id.* ¶ 35)

### B.  The April 24, 2021, Incident at the Harpeth Hotel.

On April 24, 2021, at the Harpeth Hotel in Franklin, Tennessee, Mr. Johnson had a confrontation with Dalton Stevens, a student wearing a red prom dress. (Compl. ¶¶ 64-70, 78) On that date, Stevens' boyfriend, Jacob Geittmann, posted a Video Clip of that event on TikTok. (*Id.*

---

[1] The instant lawsuit is the third time in less than three years that Ms. Griffin has been sued for exercising her free speech rights on Twitter. Ms. Griffin prevailed in both of the prior cases, which were dismissed upfront for lack of personal jurisdiction. *Doe v. Griffin*, 2020 U.S. Dist. LEXIS 62645 (E.D. Ky. 2020), *motion for reconsid. denied*, 2020 U.S. Dist. LEXIS 109712 (E.D. Ky. Apr. 9, 2020), *aff'd sub nom.*, *Blessing v. Chandrasekhar, et al.*, 988 F.3d 889 (6th Cir. 2021) (Case No. 20-5852); *Does v. Haaland, et al.*, Case No. 19-CI-01351, Kenton Circuit Court, First Division, KY (Feb. 22, 2021). This campaign against Ms. Griffin, together with the gratuitous and irrelevant allegations in the Complaint attacking her personally (*see* Compl. ¶¶ 24-30), suggests that any improper motive resides **with Plaintiffs and their counsel** rather than with Ms. Griffin. *See, e.g., Folta v. New York Times Co.*, 2019 WL 1486776, at *9 (N.D. Fla. Feb. 27, 2019) ("Today, it seems that super-wealthy individuals — undeterred by the negative outcomes and market forces that used to prevent many defamation suits — can treat 'suing the press as an investment' and can pursue their objectives by funding cases and waiting for the right combination of issue, judge, and jury."). This Court has broad authority to regulate these tactics, including but not limited to 28 U.S.C. Section 1927 and its inherent authority under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

¶¶ 71, 76) TikTok removed it, but it had spread to "other devices and social media service, including Twitter, Reddit, and LinkedIn." (*Id*. ¶ 77)

### C.  The April 25, 2021, TikTok Posts and VisuWell's Response.

On April 25, 2021, Geittmann posted two additional TikTok videos about the incident. (Compl. ¶ 78)  In response thereto and on that same date, a user named "Fifty Shades of Whey" (residence not specified) posted the Video Clip stating "Homophobic POS in Tennessee harasses a teenager for wearing a dress to prom." (*See* Ex. B to Compl.)  Also on April 25, 2021, the Chairman of the Board of VisuWell, Mr. Johnson's employer, called Mr. Johnson about the Video Clip. (*Id*. ¶ 96)

### D.  Ms. Griffin's Tweets on April 26, 2021.

On April 26, 2021, at 1:45 AM, Ms. Griffin posted her <u>first tweet</u>, which re-posted the Fifty Shades tweet, and commented "If this is Sam Johnson in Nashville, Tennessee, the CEO of @VisuWell, healthcare-tech-growth strategist, married to Jill Johnson where they may reside in Franklin, Tennessee, it seems like he's dying to be online famous." (Compl. ¶ 81 and Ex. B)

Ms. Griffin posted a <u>second tweet</u> at 11:15 AM on April 26, asking "Who is? THIS (sic) Sam Johnson of Franklin Tennessee." (Compl. ¶ 86 and Ex. E)

### E.  VisuWell's Termination of Mr. Johnson on April 26, 2021.

On April 26, 2021, "some of Visuwell's customers, including [UH Cleveland] took notice of the Video Clip and the April 24 Incident." (Compl. ¶ 84)  UH Cleveland posted that it was "shocked and disturbed" by the Video Clip, and was "evaluating our business relationship with VisuWell[.]" (*Id*.)  Also on April 26, 2021, at 5:08 PM, University of Arkansas for Medical Sciences (UAMS), another VisuWell customer, tweeted that it did not condone Mr. Johnson's behavior and that its "decision on whether or not we will continue our business arrangement with VisuWell depends on the company's reaction to the situation." (Compl. ¶ 85 and Ex. D)

On April 26, 2021, VisuWell terminated Mr. Johnson "[a]fter investigating the matter and speaking to individuals involved." (Compl. ¶ 85) VisuWell announced its termination decision by tweet on that date at 6:07 PM. (*Id.* ¶ 88 and Ex. F)

### F. Ms. Griffin's Final Tweet on April 26, 2021.

After VisuWell had announced its termination of Mr. Johnson, Ms. Griffin posted a <u>third tweet</u> on April 26, 2021, at 8:51 PM, asking if Mr. Johnson had been removed from the company's Board. (Compl. ¶ 89) VisuWell promptly responded, confirming that Mr. Johnson had been "terminated." (*Id.* ¶ 90 and Ex. G)

According to the Complaint, Ms. Griffin's tweets, including the third tweet subsequent to Mr. Johnson's termination, constitute the sole alleged basis for liability and personal jurisdiction with respect to Ms. Griffin. Mr. Johnson has also sued his former employer VisuWell and its client University Hospitals for his termination.

## ARGUMENT

## I. THE COURT LACKS PERSONAL JURISDICTION OVER MS. GRIFFIN

Defendant Kathy Griffin, a citizen of California (Compl. ¶ 35), lacks sufficient minimum contacts with the State of Tennessee to support personal jurisdiction. The only basis alleged for jurisdiction over Ms. Griffin are three isolated tweets made on Twitter commenting on a matter of public interest to a nationwide audience. It is well settled that such social media posts are an insufficient basis to support the exercise of personal jurisdiction over an out-of-state defendant. Accordingly, the Complaint should be dismissed.

### A. Legal Standard.

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiffs bear the burden of establishing personal jurisdiction over the defendant. *See Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003); *Nixon v. Bevini, S.R.L.*, 2022 WL 2311767, at *2

(M.D. Tenn. Jun. 27, 2022). Plaintiffs may not stand on their pleading, but must make a *prima facia* showing with specific facts demonstrating that the Court has jurisdiction. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012).

In a diversity action, the exercise of personal jurisdiction over an out-of-state defendant "is appropriate only if it meets the state's long-arm statute and constitutional due process requirements." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Because the jurisdictional limits of the Tennessee long-arm statutes are coterminous with those imposed by the Due Process Clause, *State of Tennessee v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 741 (Tenn. 2013), the Court need only determine whether exercising personal jurisdiction violates constitutional due process. *Bridgeport Music, Inc.*, 327 F.3d at 477; *see also Bauer v. Nortek Global HVAC LLC*, 2016 U.S. Dist. LEXIS 135984, at *15 (M.D. Tenn. Sep. 30, 2016).

The Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). While the defendant's physical presence within the state is not required, due process requires that the defendant have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "The 'minimum contacts' analysis depends on the defendant's contact with the forum, 'not the defendant's contacts with persons who reside there.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) (quoting *Walden*, 571 U.S. 271). The critical question "is whether 'the defendant's conduct and connection with the forum state are such that [s]he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz.*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

### B. **Plaintiffs Cannot Establish General Personal Jurisdiction.**

Depending on the type of contacts in a case, personal jurisdiction may be either general or specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,* 137 S. Ct. 1773, 1779-80 (2017). General jurisdiction exists over a defendant when her "'contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Miller*, 694 F.3d at 678 (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc*., 882 F.2d 1087, 1089 (6th Cir. 1989)).

Here, Plaintiffs do not and cannot allege facts supporting general jurisdiction over Ms. Griffin. As conceded by Plaintiffs, Ms. Griffin is a resident of California and cannot be served in Tennessee. (Compl. ¶¶ 35, 44) While Plaintiffs claim that Ms. Griffin "has routinely derived revenue from the State of Tennessee through various live performances" (*id.* ¶ 43), this allegation is unsupported by any specific facts other than a vague reference to two performances by Ms. Griffin in Tennessee many years ago. (*Id.*) Ms. Griffin's isolated visits to Tennessee are insufficient to support jurisdiction over her. *See, e.g., Int'l Shoe*, 326 U.S. at 317 (recognizing that "single or isolated" acts within the forum are insufficient to support personal jurisdiction with respect to matters unrelated to those acts); *Binion v. O'Neal*, 95 F.Supp.3d 1055, 1061 (E.D. Mich. 2015) (holding defendant's "several business connections" to forum were insufficient to establish personal jurisdiction).

### C. **Plaintiffs Cannot Establish Specific Personal Jurisdiction.**

Specific jurisdiction over Ms. Griffin is also lacking because she did not purposefully avail herself of the privilege of conducting activities within Tennessee. A finding of purposeful availment is "essential" to a finding of personal jurisdiction over the defendant. *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000); *accord Intera Corp.*, 428 F.3d at 616; *Ga. Gaming*

*Inv., LLC v. Chicago Title & Trust Co.*, 2021 U.S. Dist. LEXIS 180900, at *8 (W.D. Tenn. Sep. 22, 2021). This requirement "ensures that the defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Calphalon Corp.*, 228 F.3d at 721-722 (internal quotation marks omitted, citing *Burger King Corp.*, 471 U.S. at 474-75). Purposeful availment is satisfied only when the defendant's contacts with the forum "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Burger King Corp.*, 471 U.S. at 474 (emphasis in original, quotation marks omitted); *accord Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994).

Plaintiffs attempting to establish personal jurisdiction over an out-of-state defendant based on allegedly tortious information published on social media often rely on the "effects test" first enunciated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *See, e.g., Blessing*, 988 F.3d at 904. In *Calder*, entertainer Shirley Jones brought an action in California against the out-of-state author and editor of an allegedly defamatory *National Enquirer* article. The Supreme Court held that jurisdiction over defendants was proper because the defendants' intentional actions were "expressly aimed" at California and they knew the "brunt of the harm" would be felt there. *Id*. at 789-90. Subsequently, in *Walden v. Fiore*, the Supreme Court clarified that "mere injury to a forum resident is not a sufficient connection to the forum." *Id.*, 571 U.S. at 290. Addressing *Calder* specifically, the *Walden* court highlighted that the *National Enquirer* had "a California circulation of roughly 600,000," and that "[the] defendants relied on phone calls to 'California sources' for the information in their article." *Walden*, 571 U.S. at 287. Moreover, the *Walden* court emphasized that it was "the reputation-based 'effects' of the alleged libel [that] connected

the defendants to California, not just to the plaintiff" and that "[t]he strength of that connection was largely a function of the nature of the libel tort.[2] *Id.* at 287.

Even before the *Walden* decision, "[t]he Sixth Circuit, as well as other circuits, ha[d] narrowed the application of the *Calder* 'effects test[.]'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007); *see also Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109, 113 n.1 (6th Cir. 2005). Thus, while personal jurisdiction may exist where an individual "expressly aim[s]" tortious activities toward the forum state knowing the "brunt of the harm" would be felt there, *Calder*, 465 U.S. at 789, the mere allegation of intentional tortious conduct that has injured a forum resident is insufficient, by itself, to satisfy purposeful availment. *See Air Prods. & Controls,* 503 F.3d at 552; *Higdon v. Cannon*, 2012 U.S. Dist. LEXIS 16162, at *26 (E.D. Tenn. Feb. 9, 2012). The plaintiff must establish "something more to demonstrate that the defendant directed [its] activity toward the forum state." *Hyperbaric Options, LLC v. Oxy-Health, LLC*, 2013 WL 5449959, at *7 (E.D. Mich. Sept. 30, 2013)(internal citations omitted); *accord Lewis v. Loftin*, 2017 WL 5505341, at *4 (W.D. Tenn. Mar. 15, 2017).

Applying these well-settled principles, courts in the Sixth Circuit and throughout the country have held that social media posts that are "meant for a national or even international audience" do not satisfy purposeful availment or the *Calder*-effects test. *See, e.g., Blessing*, 988 F.3d at 905 n.15 (noting that federal appellate courts have held that "posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)") (quoting *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010) and citing *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002)); *Miller v. Gizmodo Media Grp., LLC*, 383 F.Supp.3d

---

[2] Notably here, Plaintiffs do not allege that Ms. Griffin's tweets were false or defamatory.

4876-1534-5449

1365, 1375 (S.D. Fla. 2019) (noting "courts have uniformly rejected the argument that a tweet, not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause"); *Vangheluwe v. Got News, LLC*, 365 F.Supp.3d 850, 863-64 (E.D. Mich. 2019) (holding no specific jurisdiction over defendants who erroneously identified the plaintiff as a killer and disclosed on Twitter that he lived in Michigan, but did not provide his street address or otherwise "dox" him); *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, 2017 WL 2778825, at *10 (D. Md. June 26, 2017) (holding allegedly defamatory pod casts, articles, and tweets concerning Maryland charity were insufficient to confer jurisdiction over out-of-state defendants); *Cross v. Rodgers,* 2017 WL 3237623, at *5 (M.D. Tenn. July 31, 2017) (holding allegedly defamatory Facebook posts concerning plaintiff were "not directed to Tennessee" and were not sufficient to subject nonresidents to personal jurisdiction in Tennessee).

The exercise of specific jurisdiction over Ms. Griffin based on her social media commentary is foreclosed by the Sixth Circuit's decision in *Blessing v. Chandrasekhar*, which affirmed dismissal of a similar lawsuit brought against Ms. Griffin for lack of personal jurisdiction. In *Blessing*, a group of high school students from Covington, Kentucky "received widespread attention for their conduct at the Lincoln Memorial during the 2019 March for Life Rally." 988 F.3d at 892. The Covington students sued Twitter users Sujana Chandrasekhar and Ms. Griffin based on their online commentary concerning the plaintiffs. 988 F.3d at 892. Chandrasekhar posted pictures of the students and commentary that "[t]hese are scary faces, indeed. #CovingtonShame . . . Massive re-education is needed, for these children, their families and their communities." *Id.* at 892. In a series of four tweets, Ms. Griffin provided a link to a video of the students, requested that the students be named and shamed, criticized the students' high school for its response to the situation, and suggested that followers contact the high school. *Id.* at 893.

4876-1534-5449

The *Blessing* court easily dispensed with the plaintiffs' argument that defendants' tweets subjected them to personal jurisdiction in Kentucky. *Id.* at 904-907. The Court noted that neither of the defendants "had any preexisting relationship with the plaintiffs," they "took no affirmative steps to direct any communications to the plaintiffs or to anyone else in Kentucky, and . . . did not otherwise avail themselves of the benefits and protections of Kentucky's laws." *Id.* at 906. Even though the defendants urged others to identify and shame the defendants and contact their school, the Sixth Circuit concluded that their messages were not "specifically targeted or even directed at Kentucky readers, as opposed to the residents of other states." *Id.* (internal quotation marks and alternation omitted, citing *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005)).

This Sixth Circuit decision is dispositive, as there are no meaningful differences between the facts in *Blessing* and those alleged by Plaintiffs here. Plaintiffs' claims are predicated on three isolated tweets concerning a matter of general public concern that formed no jurisdictionally relevant contacts with the State of Tennessee. Prior to the events underlying this suit, the parties were "complete strangers." (Compl. ¶ 32) Ms. Griffin did not travel to, conduct activities in, contact or send something to anyone in Tennessee. "There is no evidence that [Ms. Giffin] posted the tweets hoping to reach [Tennessee] specifically as opposed to [he]r Twitter followers generally." *Blessing*, 988 F.3d at 906. Any contact Ms. Griffin had with Tennessee was "only because the plaintiff chose to reside there" and is therefore fortuitous. *Calphalon Corp.*, 228 F.3d at 723; *see also Blessing*, 988 F.3d at 904 (emphasizing that "'the plaintiff cannot be the only link between the defendant and the forum'") (quoting *Walden*, 571 U.S. at 285).

Plaintiffs' conclusory allegations in support of specific jurisdiction are plainly insufficient. (*See* Compl. ¶¶ 38-42) Indeed, Plaintiffs' allegation that Ms. Griffin's tweets were directed to "her followers and the public" (Compl. ¶ 6) negates any plausible inference that Ms. Griffin's tweets were expressly aimed at a Tennessee audience. Purposeful availment is not satisfied merely

because Ms. Griffin had "actual knowledge" that Plaintiffs reside in Tennessee, or because some of Ms. Griffin's tweets referenced "Tennessee citizens" and an event that occurred in Tennessee. (*Id.* ¶ 38.) *See Neogen Corp. v. Vicam*, 1997 WL 481021, at *5 (W.D. Mich. Feb. 20, 1997) ("If a defendant may be brought within the jurisdiction of the court simply by knowledge of where plaintiff resides at the time a tortious act is committed, there can be little remaining meaning to the requirement of purposeful conduct or of "substantial connection" to the forum."). As numerous cases have held, internet speech directed to a national audience—even where it concerns a forum resident and events that occurred in the forum—is an insufficient basis for personal jurisdiction.[3]

By posting commentary on social media regarding a Tennessee resident involved in a public event of national interest that occurred in Tennessee, Ms. Griffin did not purposefully avail herself of the privilege of conducting activities within Tennessee, and the exercise of jurisdiction over her under these circumstances would be violate due process. Plaintiffs' attempts to establish personal jurisdiction over Ms. Griffin are futile, and the Complaint should be dismissed.

## II. THE TORT CLAIMS ASSERTED IN THE COMPLAINT ARE PROHIBITED BY THE CONSTITUTION

### A. Standard of Review.

The purpose of a motion to dismiss is to enable a defendant to challenge the legal sufficiency of a complaint. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2009).

---

[3] *See, e.g., Johnson v. Arden*, 614 F.3d 785, 796-97 (8th Cir. 2010) (holding Missouri lacked jurisdiction over nonresident even though allegedly defamatory posts concerning Missouri residents noted that their business was located in Unionville, Missouri); *Young*, 315 F.3d at 263 (holding Connecticut-based newspapers "did not manifest an intent to aim their websites or the posted articles at a Virginia audience" even though articles concerned a Virginia resident and unfavorable conditions in Virginia prisons); *Alexander v. Diet Madison Ave.*, 473 F.Supp.3d 551, 558 (E.D. Va. 2020) (holding court lacked personal jurisdiction over defendant who published purportedly defamatory article concerning Virginia resident, including sexual harassment claims made against him by his colleagues and his subsequent resignation from Virginia-based employer); *Blankenship v. Napolitano*, 451 F.Supp.3d 596, 622-23 (S.D. W.Va. 2020) (holding West Virginia had no jurisdiction over non-resident defendants who broadcast purportedly defamatory comments regarding West Virginia resident in the context of discussing West Virginia primary).

4876-1534-5449

This is especially important when dealing with fundamental constitutional interests such as the First Amendment, as in this case, where the mere filing of a lawsuit imposes a chilling effect on speech. *New York Times Co. v. Sullivan*, 376 U.S. 254, 278 (1964). To survive a motion to dismiss, a complaint "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to state a claim for relief that is plausible on its face." *Hensley Mfg. v. Propride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

While the Court should accept "well-pleaded" facts as true in determining whether a facially plausible claim exists, it "need not 'accept as true a legal conclusion couched as a factual allegation.'" *Hensley Mfg.*, 579 F.3d at 609 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Such conclusory statements should therefore be excluded from the Court's analysis before it determines whether there are sufficient remaining facts to support a facially plausible claim for relief. *See Bunn v. Navistar, Inc.*, No. 3: 18-cv-00651, 2019 U.S. Dist. LEXIS 12390, at *3-5 (M.D. Tenn. Jan. 24, 2019) (dismissing claims with prejudice); *Iqbal*, 556 U.S. at 679. Because the pleading standard for stating a viable cause of action has not been met in this case (*see Iqbal*, 556 U.S. at 684), the Court should dismiss the Complaint.

**B.** **The First Amendment Precludes Civil Liability Based on Ms. Griffin's Tweets.**

The First Amendment reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. at 270. The right to speak on matters of public concern "is more than self-

expression; it is the essence of self-government." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) (quotation marks and citations omitted). Courts protect this type of speech because "freedom to discuss public affairs . . . is unquestionably . . . the kind of speech the First Amendment was primarily designed to keep within the area of free discussion." *Sullivan*, 376 U.S. at 296-97; *see also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (First Amendment promotes the "free flow of ideas and opinions on matters of public interest").

While the state has an interest in protecting its citizens' commercial relationships through tort law, "the presence of activity protected by the First Amendment imposes restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916-17 (1982); *see also Coplin v. Fairfield Pub. Access Television Commn.*, 111 F.3d 1§ 395, 1401 n.2 (8th Cir. 1987) ("As the Supreme Court has made clear, states may not regulate speech merely because the speech is defined as a state-law tort."); *Higgins v. Ky. Sports Radio, LLC*, 2019 U.S. Dist. LEXIS 45535, at *27 (E.D. Ky. Mar. 20, 2019) ("As a general legal maxim, individuals may not use tort actions to abridge and chill the freedom of speech protected by the First Amendment."), *aff'd*, 951 F.3d 728 (6th Cir. 2020).

### 1. Ms. Griffin's Tweets Merit "Special Protection."

Ms. Griffin's tweets unquestionably addressed "a matter of public concern, [and are therefore] entitled to 'special protection' under the First Amendment." *Snyder v. Phelps*, 562 U.S. at 458. Plaintiffs try to circumvent that protection by positing a potpourri of tort claims (rather than a defamation claim), all of which are precluded by both the First Amendment and the Tennessee Constitution of 1796.[4] Indeed, a case involving circumstances far more egregious than

---

[4]      A flawed premise pervades the Complaint: although not denominated as causes of action, Plaintiffs
allege that Ms. Griffin's commentary violated Tennessee's criminal harassment statute (Tenn. Code

4876-1534-5449

those alleged here underscores the First Amendment's strict limitations on non-defamation tort claims premised on speech concerning public matters.

In *Higgins v. Ky. Sports Radio*, a radio show relentlessly criticized a referee (Higgins) for his game-ending call during a college basketball game and encouraged listeners to leave bad reviews on the webpage of Higgins's Weatherguard roofing business. 951 F.3d at 731-33. Higgins received thousands of angry calls, tweets, and online reviews, which dramatically impacted his business and required a bodyguard to accompany him at the next game he refereed.[5] *Id.* at 733. Statements repeated on the air included allegations that Higgins had propositioned a 13-year-old

---

§ 39-17-308) and criminal stalking statute (Tenn. Code § 39-17-315). (Compl. ¶ 105) However, their repetition of these allegations throughout the Complaint to prop up their pastiche of tort claims cannot obscure the actual text of Ms. Griffin's comments, which are neither harassing, threatening, nor menacing — not even close. If accepted, this crude alchemy "would collide with the First Amendment" by criminalizing broad swaths of protected speech. *See United States v. Yung*, 37 F.4th 70, 78 (3d Cir. 2022) ("The First Amendment protects at least some speech that persistently annoys someone and makes him fearful or timid."); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001) (Alito, J.) ("There is no categorical 'harassment exception' to the First Amendment's free speech clause."); *Church of the Am. Knights of the Ku Klux Klan v. City of Erie*, 99 F.Supp.2d 583, 591 (W.D. Pa. 2000) (striking down statute which prohibited wearing a mask "with the intent to intimidate, threaten, abuse or harass any other person"); *see Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 264 (3d Cir. 2002) ("'Harassment,' when targeted on the basis of its expressive content, encompasses speech within the area protected by the First Amendment.").

Nor does the Complaint come remotely close to supporting a criminal stalking allegation, which requires, *inter alia*, a "willful course of conduct involving repeated or continuing harassment of another individual." Tenn. Code Ann. § 39-17-315(a)(4). Plaintiffs have alleged no such "course of conduct" by Ms. Griffin. Rather, the Complaint alleges only that she made three tweets, a few lines each, directed to the public, over a time span of less than 24 hours addressing the incident that occurred at the Harpeth Hotel and Mr. Johnson's Board member status. Ms. Griffin's topical, spontaneous, and limited comments hardly rise to the level of a continuous and repetitive "pattern of conduct" envisioned by the statute. Tenn. Code Ann. § 39-17-315(a)(1).

[5] The district court's description underscored the gravity of the viral response confronting Higgins:

> Some angry fans and observers incessantly contacted the Plaintiffs directly, resulting in thousands of calls to Mr. Higgins's home and business within a span of a few days. Additionally, many individuals posted false reviews of Mr. Higgins's business online and posted reviews about Higgins on social media ranging from satirical to nasty. And they piled on, some individuals even contacted Mr. Higgins's family and made death threats.

2019 U.S. Dist. LEXIS 45535, at *2. As a result, law enforcement authorities "added patrols around the Higgins family home and Weatherguard employees were told not to work for several days." *Id.* at *15.

4876-1534-5449

boy, "takes money under the table from the mafia in Vegas," and employed "illegal labor, substandard materials, and shady accounting practices." *Id.* Higgins and his wife[6] — who, like Plaintiffs here, did not assert a defamation claim (951 F.3d at 739) — brought multiple tort claims stemming from that on-air commentary and the adverse response it encouraged, including claims for tortious interference with a business relationship, harassing communications, intentional infliction of emotional distress, invasion of privacy, and negligence. *Id.* at 733. The district court granted a Rule 12 motion to dismiss those claims in their entirety, and the Sixth Circuit affirmed, holding that the challenged statements addressed a matter of public concern and were therefore protected by the First Amendment regardless of how the claims were styled:

> Higgins raises seven causes of action, but they all reduce to a single theory of liability. No matter the label, Higgins claims that Kentucky Sports Radio owes him money damages for its unfavorable statements about him and his roofing business after the North Carolina-Kentucky game. The First Amendment bars the theory and the claims on this record.

*Id.*

The same can certainly be said here about Plaintiffs' indiscriminate medley of tort theories. Higgins had no actionable claim for the reputational harm, lost revenues, or physical threats the radio host indisputably "triggered" on his say-so, and Plaintiffs have none, either.

## III. THE COMPLAINT'S TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW

Whether based on Tennessee common or statutory law, the Complaint's causes of action sounding in tortious interference with employment and/or contractual relations asserted on behalf of Mr. Johnson (Counts 1, 2, and 3) are unified by the requirement that the alleged interference must have an improper motive or means. *See, e.g., Renasant Bank v. Ericson,* 801 F.Supp.2d 690,

---

[6] As part of the social media tsunami that engulfed the Higgins family, "Ms. Higgins began receiving messages pertaining to Mr. Higgins's officiating performance on her personal Facebook Messenger account." 2019 U.S. Dist. LEXIS 45535, at *15.

4876-1534-5449

704 (M.D. Tenn. 2011). That element cannot be satisfied here, where, as discussed above, Plaintiffs' claims all arise from Ms. Griffin's constitutionally protected speech.

The recent decision in *Owens v. Lead Stories, LLC*, 2021 WL 3076686 (Del. Super. Ct. July 20, 2021), *aff'd*, 273 A.3d 275 (Table) (Del. 2022), is instructive on this point.[7] The plaintiff in *Owens*, a conservative political activist and social media commentator, sued *USA Today* for publishing a "fact-check" article that disputed her claims in a Facebook post questioning the severity of the COVID-19 pandemic and the propriety of the federal government's response thereto. *Id*. at *30. The court dismissed the complaint's tortious interference and unfair competition claims, emphasizing that a tort claim "cannot survive if the claim is premised solely on statements that are protected by the First Amendment because the exercise of constitutionally protected speech cannot be an 'improper' or 'wrongful' action." *Id*. at *47-48 (footnote omitted). So too here, where Plaintiffs' attempt to challenge "a decision to publish constitutionally protected speech" through reliance on claims alleging tortious interference is "not consistent with First Amendment principles." *Id*. at *50-51 (footnote omitted) (granting motion to dismiss tortious interference with contract, tortious interference with business relations, and unfair competition claims).

Consistent with the ruling in *Owens*, and contrary to the Complaint's allegations here, courts have repeatedly invoked the First Amendment to dismiss tortious inference claims based on protected speech because "such lawful activity is insufficient to establish the required element of improper conduct." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858 (10th Cir. 1999); *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 973 (3d Cir. 1985) ("Since neither [defendant] can be found liable for defamation, the intentional interference with contract

---

[7]  Mr. and Mrs. Johnson's counsel represented Candace Owens in the Delaware case.

4876-1534-5449

relations count is not actionable because there is no basis for finding that their actions were 'improper'"); *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (affirming dismissal of tortious interference claim because publication of allegedly actionable statements was not "wrongful"); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1201 (10th Cir. 2007) (holding, where the statements at issue were protected by the First Amendment, "the intentional interference with contractual relations count is not actionable because there is no basis for finding that the[] actions were improper").

It cannot reasonably be disputed that Ms. Griffin's comments regarding a controversial and highly publicized incident were "constitutionally protected activity" that "serve[d] a legitimate purpose." Tenn. Code Ann. § 39-17-315(a)(3). The Complaint's allegations make clear that Ms. Griffin took umbrage at the Video Clip depicting Mr. Johnson's actions at the Harpeth Hotel. As a result, she chose to express her opinion and condemn his behavior. In a democracy, seeking to identify, debate — and even "shame" (*see, e.g.*, Compl. ¶¶ 6, 29) — those with whom one disagrees serves a legitimate purpose and is protected under the First Amendment. *Wagda v. Town of Danville*, 2016 U.S. Dist. LEXIS 147108, at *15 (N.D. Cal. 2016) ("'shaming' . . . is not, however, cognizable as a First Amendment violation"); *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *27 ("While the First Amendment protects speech that is positive, agreeable, and uplifting, the First Amendment's defense of free speech also extends to speech that is distressful, hurtful, offensive, and nasty."). Thus, allowing this case to proceed past the pleading stage would "constitute a forbidden intrusion on the field of free expression." *Sullivan*, 376 U.S. at 285.

In any event, Plaintiffs' speculation about Ms. Griffin's alleged improper motives (Compl. ¶¶ 115, 123, 131) does not support the Complaint's tortious interference claims.[8] As the Complaint

---

[8] The Complaint's conclusory allegations that Ms. Griffin was aware of Mr. Johnson's employment contract with VisuWell (Compl. ¶¶ 122, 130) and, through her tweets, intentionally procured its breach

itself acknowledges, VisuWell tweeted about the termination of Mr. Johnson's employment *before* Ms. Griffin inquired on Twitter about his status on the Board of Directors.  (*Id*. ¶¶ 88-91)  The attribution of an improper motive to Ms. Griffin ignores that chronology and fails to divest her tweets of constitutional protection.  *Jefferson Cnty. Sch. Dist.*, 175 F.3d at 858 ("To allow a plaintiff to establish a tort claim by proving merely that a particular motive accompanied protected speech . . . might well inhibit the robust debate that the First Amendment seeks to protect.").

## IV.    THE COMPLAINT'S IIED CLAIM FAILS AS A MATTER OF LAW

The Complaint's fourth cause of action sounding in intentional infliction of emotional distress ("IIED") cannot circumvent the constitutional privileges and defenses delineated above that immunize Ms. Griffin's tweets from tort liability.  *Hustler Magazine v. Falwell*, 485 U.S. at 55-56.  In order to survive a motion to dismiss, Plaintiffs must plead facts supporting each element of the IIED tort.  *See Desoto v. Bd. of Parks & Rec.*, 64 F.Supp.3d 1070, 1096-97 (M.D. Tenn. 2014 (Trauger, J.).  The elements of the IIED tort are whether the defendant's conduct was "intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff."  *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012).  Recognizing that the tort requires "severe mental injury," it is for the Court to determine in the first instance whether a defendant's conduct may reasonably be regarded as so extreme or outrageous as to permit recovery.  *Swallows v. Western Elect. Co.*, 543 S.W.2d 581, 583 (Tenn. 1976) (granting motion to dismiss).  Liability for IIED "does not extend to mere insults,

---

(*id*. ¶¶ 123, 131) is flatly contradicted by allegations in the Complaint that Mr. Johnson has filed in this Court against UH Cleveland.  *See id*. ¶ 84, *Johnson v. Univ. Hosp. Health System, Inc.*, Case No. 3:21-cv-00656 (M.D. Tenn. Aug. 24, 2021) [Dkt. No. 1].  That Complaint, which asserts the same three tortious interference claims that Mr. Johnson has asserted against Ms. Griffin, alleges that on April 26, 2021, UH Cleveland representatives called VisuWell's Chariman and "verbally demanded that Mr. Johnson be fired," upon threat of pulling the Hospital's business from VisuWell — an "ultimatum" that was the "proximate cause" of Mr. Johnson's termination: "But for UH Cleveland's interference, Mr. Johnson would not have been fired."  *See* Dkt. No. 1, ¶¶ 72-74.

4876-1534-5449

19

indignities, threats, annoyances, petty oppression or other trivialities." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (reversing denial of summary judgment) (quoting *Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 398 S.W.2d 270, 274 (1966)).

The Complaint essentially objects to Ms. Griffin's tweets calling out Mr. Johnson for accosting a high school student who was taking prom pictures in the courtyard of the Harpeth Hotel. Her speech, by definition, cannot be considered "outrageous." As discussed above, it is entitled to the highest level of constitutional protection. In *Hustler*, in considering the emotional distress claims asserted by the Reverend Falwell regarding an ad parody, the United States Supreme Court recognized that even extremely caustic and indecent expression has long been tolerated and encouraged by "civilized society" and is protected under the First Amendment. 485 U.S. at 56-57. Ms. Griffin's exercise of her constitutionally protected right of free expression in this instance is clearly not the type of intentionally outrageous activity required in Tennessee to award damages for emotional distress.

In addition to the above infirmities, the Complaint fails to recite any facts to support the allegation that Plaintiffs "suffer[ed] severe emotional distress and mental anguish." (Compl. ¶ 140) Content merely to parrot this boilerplate element of an IIED claim, Plaintiffs nowhere allege that they missed any time from work, had their social affairs or daily activities interrupted or interfered with, received psychiatric counseling or other medical treatment, or even lost any sleep. Their conclusory averments therefore fail to satisfy the *Iqbal-Twombly* pleading requirements. *See, e.g.*, *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-47 (6th Cir. 2012) ("a formulaic recitation of the elements of a cause of action" does not satisfy *Twombly*'s plausibility standard). As pleaded, Plaintiffs' claim that they were emotionally traumatized by the tweets at issue cannot be actionable. Count 4 should be dismissed.

## V. THE COMPLAINT'S INTRUSION UPON SECLUSION CLAIM FAILS AS A MATTER OF LAW

Tennessee has adopted the *Restatement (Second) of Torts* for intrusion upon seclusion claims, allowing liability to attach to a defendant "who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." *Givens v. Mullikin*, 75 S.W.3d 383, 411 (2002) (quoting *Restatement (Second) of Torts* § 652B) (internal quotations and citations omitted).

Here, the Complaint's fifth cause of action, asserted on behalf of Mrs. Johnson, fails as a matter of law. It alleges that Ms. Griffin tweeted "to make Mr. and Mrs. Johnson 'online famous.'" (Compl. ¶ 144) Ms. Griffin actually said no such thing, however, as her first tweet solely referenced Mr. Johnson in opining that "it seems like *he's* dying to be online famous." (Compl. ¶ 81 and Ex. B; emphasis supplied) Compounding this deficiency, Mrs. Johnson's marriage to her husband, operation of her business, and residence in Franklin, Tennessee, are matters of public record. *Givens*, 75 S.W.3d at 412 ("Thus, there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection."). Indeed, the case cited in paragraph 143 of the Complaint makes this very point. *Roberts v. Essex Microtel Assocs.*, 46 S.W.3d 205, 210 (Tenn. Ct. App. 2000). This is hardly the type of information — her marital status and hometown — that Mrs. Johnson has maintained in private seclusion, and tweeting this information can hardly be said to be highly offensive to a reasonable person.[9]

---

[9]    Owing to First Amendment considerations, courts have strictly construed the "highly offensive" requirement in dismissing seclusion claims even under circumstances involving deceptive practices far removed from Ms. Griffin's tweets here, noting that the "motive to gather news can negate the offensiveness element" of the tort. *Four Navy Seals v. Assoc. Press*, 413 F.Supp.2d 1136, 1147 (S.D. Cal. 2005); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 30 F.Supp.2d 1182, 1190 (D. Ariz. 1988)

4876-1534-5449

In a strained attempt to satisfy this requirement, the Complaint alleges the challenged tweets "doxed" Mrs. Johnson.  (Compl. ¶¶ 145, 150)  However, Ms. Griffin did not expose any of Plaintiffs' personal or private information such as email contacts, cellphone numbers, or bank account or social security numbers, did not disclose their residential street address, and nowhere mentioned Mrs. Johnson's business.  She did not say Plaintiffs should be subject to threats or violence.  She did not ask anyone to target them in their homes, at their workplace, or otherwise disturb their privacy.  No "doxing" happened here.  On their face, the tweets fail the very definition of "doxing" offered by Plaintiffs in the form of posting someone's "personally identifiable information, such as their address and workplace."  (Compl. ¶ 5)  Indeed, the only doxing apparent in this case has arguably been committed by Plaintiffs themselves in listing Ms. Griffin's California residential address in a public court filing (Compl. ¶ 35) while ostentatiously vilifying her in that document (*id.* at ¶¶ 24-31), apparently in the hope of enlisting participants in "America's 'culture wars'" (*id.* ¶ 8) to support their cause.

As with the other counts in the Complaint, Mrs. Johnson may not attempt to avoid the protections of the First Amendment by seeking to hold Ms. Griffin liable under an invasion of privacy theory for public statements regarding matters of public concern.[10]  *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *30 (First Amendment bars invasion of privacy claim "when the alleged tortious conduct is speech on a matter of public concern in a public place or forum").  In the final

---

("the strong societal interest in effective and complete reporting of events" may "justify an intrusion that would otherwise be considered offensive"), *aff'd*, 306 F.3d 806 (9th Cir. 2002).

[10]  Notably, in jurisdictions that recognize the seclusion tort, this claim focuses on the manner in which the purportedly private information was obtained, *not* on the information's publication.  *Gleason v. Smolinski*, 2009 WL 2506607, at *7-8 (Conn. Super. Ct. July 20, 2009) ("Publication of private information alone is not legally sufficient to sustain this particular cause of action, which is concerned with the methods used when obtaining private information rather than its subsequent dissemination.");  *Pierson v. News Group Publ'ns, Inc.*, 549 F.Supp. 635, 640 (S.D. Ga. 1982) (same); *Tagouma v. Investig. Consultant Srvcs., Inc.*, 4 A.3d 170, 174 (Pa. Super. Ct. 2010) (same)..

analysis, the Complaint's invasion of privacy claim reduces to the allegation that Ms. Griffin "nam[ed] Mrs. Johnson and her hometown in her first tweet." (Compl. ¶ 148) To permit recovery on this basis would exponentially increase the potential liability exposure of social media users, and would ultimately "quell open debate and commentary on public events and issues," solely because Plaintiffs were displeased with how they were perceived by others who may hold views different from their own. *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *40-41. Therefore, the Complaint's privacy claim should be dismissed.

## VI. PLAINTIFFS' CLAIMS REQUIRING A "DUTY" SHOULD BE DISMISSED AS A MATTER OF LAW

The Complaint purports to state two causes of action (Counts 6-Prima Facie Tort and 7-Negligence Per Se) which, to the extent they exist, require a legal "duty" owed by Ms. Griffin to Plaintiffs. Yet again, these claims are merely an effort to pursue redress for perceived "reputational injury" (Compl. ¶¶ 158, 165) — the province of defamation law — under the guise of disfavored collateral tort theories and are unavailing.[11] The Complaint nowhere alleges specific facts that amounted to a breach of some duty supposedly owed to Plaintiffs.

No "*prima facie*" tort claim has been recognized in Tennessee as an independent cause of action,[12] but even assuming its existence the tweets Plaintiffs deem objectionable are both

---

[11]   *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1988) ("[A] claim for negligent publication is essentially the same as either a claim for misappropriation or for defamation, and . . . the constitutional and statutory principles regarding those standards cannot be circumvented by artful pleading.").

[12]   It does not appear that Tennessee recognizes something called "*prima facie*" tort as a separate cause of action or theory of recovery in a First Amendment case or otherwise. That phrase arises in connection with contract claims, as distinct from tort claims. Defendant acknowledges that in a 2017 unpublished decision, Judge McDonough stated that "a claim for *prima facie* tort exists only 'if a party breaches a duty which he owes to another independently of [a] contract." *Cont'l Cas. Co. v. Tyson Foods, Inc.*, No. 1:15-CV-20, 2017 WL 11180252, at *9 n.9 (E.D. Tenn. Nov. 13, 2017) (dismissing tort claim) (quoting *Calipari v. Powertel, Inc.*, 231 F.Supp.2d 734, 736 (W.D. Tenn. 2002) (noting that plaintiff had put no label on a purported tort claim in what was a contract case)).

privileged and justified as public affairs commentary protected at the core of the First Amendment. *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *3-4 ("the speech enjoys special protection and the First Amendment prevents the Plaintiffs from using tort actions to silence and punish the Defendants for engaging in protected speech").

Nor can Plaintiffs evade the First Amendment's requirements by divining a "standard of care" (Compl. ¶ 160) from Tennessee's criminal harassment and stalking laws in order to prop up their feeble negligence *per se* claim. Plaintiffs' approach not only effectively rewrites these statutes by eliminating their *mens rea* elements, but ignores that these laws cannot be conscripted to penalize Ms. Griffin's speech, for the reasons presented above. *See* Point II.B., *supra*.

## VII. THIS ACTION SHOULD BE DISMISSED, AND MS. GRIFFIN IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES, UNDER THE TPPA

Additionally, Defendant seeks dismissal and fees under the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. §§ 20-17-101 *et seq*., although this request is made as a placeholder for the following reasons: (1) the Court lacks personal jurisdiction over Ms. Griffin; (2) Tennessee law should not govern this action; therefore, should Plaintiffs choose to pursue their claims in a state that has jurisdiction, the anti-SLAPP statute of that state will apply. However, in the event that this Court denies the motion to dismiss for lack of personal jurisdiction, then Defendant requests relief under the TPPA in conjunction with her Rule 12(b)(6) motion.[13]

---

[13] Defendant recognizes that two other district court judges in this District have declined to apply the TPPA in federal court under *Erie* principles. *See Mucerino v. Martin*, No. 3:21-cv-00284, 2021 WL 5585637 (M.D. Tenn. Nov. 30, 2021) (Trauger, J.); *Lampo Grp., LLC v. Paffrath*, No. 3:18-cv-01402, 2019 WL 3305143 (M.D. Tenn. July 23, 2019). However, the undersigned counsel note that neither opinion mentioned the Legislature's intent expressly stated in the TPPA: "This chapter is intended to provide an additional substantive remedy to protect the constitutional rights of parties and to supplement any remedies which are otherwise available to those parties under common law, statutory law, or constitutional law or under the Tennessee Rules of Civil Procedure." *Id*. at 109. Defendant raises this issue to avoid any waiver.

**CONCLUSION**

Based on the foregoing reasons, Defendant Kathy Griffin respectfully requests that the Court grant her motion and enter an order dismissing the Complaint for lack of personal jurisdiction, or alternatively, for failure to state a claim and/or pursuant to the TPPA, together with such other and further relief as the Court deems just and proper.

Dated: July 15, 2022

GREENBERG TRAURIG, LLP
Michael J. Grygiel
Cynthia E. Neidl
54 State Street, 6th Floor
Albany, New York 12207
Tel: (518) 689-1400
Fax: (518) 689-1499
grygielm@gtlaw.com
neidlc@gtlaw.com

GREENBERG TRAURIG, LLP
Adam Siegler
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel: (310) 586-7700
Fax: (310) 586 7800
sieglera@gtlaw.com

(*Pro hac vice applications to be submitted.*)

WALLER LANSDEN DORTCH & DAVIS, LLP


by:     /s/ Robb S. Harvey
    Robb Harvey (TN Bar No. 01159)
    511 Union Street, Suite 2700
    Nashville, TN 37219
    Tel: (615) 850-8859
    Fax: (615) 244-6804
    robb.harvey@wallerlaw.com



*Attorneys for Defendant Kathy Griffin*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2022, a copy of the foregoing was filed electronically using the Court's Electronic Case Filing (ECF) system.  Notice of this filing is expected to be sent by operation of the Court's ECF system to the following counsel of record:

Todd V. McMurtry
J. Will Huber
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
tmcmurty@hemmerlaw.com
whuber@hemmerlaw.com

Lyndsay Smith
SMITH, PLC
311 22nd Avenue North
Nashville, Tennessee  37203
lsmith@smith-plc.com


  /s/ Robb S. Harvey

4876-1534-5449