UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
SAMUEL JOHNSON, in his individual        :
capacity and JILL JOHNSON, in her        :   Case No. 3:22-cv-00295
individual capacity,                     :
                                         :   District Judge William L. Campbell, Jr.
        Plaintiffs,                      :   Magistrate Judge Barbara D. Holmes
                                         :
v.                                       :
                                         :
KATHY GRIFFIN, in her individual capacity, :
                                         :
        Defendant.                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION
TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL
JURISDICTION AND FAILURE TO STATE A CLAIM, AND IN FURTHER
SUPPORT OF TENNESSEE PUBLIC PARTICIPATION ACT PETITION**

| | |
|---|---|
| GREENBERG TRAURIG, LLP | WALLER LANSDEN DORTCH & DAVIS, LLP |
| Michael J. Grygiel | Robb Harvey (TN Bar No. 01159) |
| Cynthia E. Neidl | 511 Union Street, Suite 2700 |
| 54 State Street, 6th Floor | Nashville, Tennessee 37219 |
| Albany, New York 12207 | Tel: (615) 850-8859 |
| Tel: (518) 689-1400 | Fax: (615) 244-6804 |
| Fax: (518) 689-1499 | robb.harvey@wallerlaw.com |
| grygielm@gtlaw.com | |
| neidlc@gtlaw.com | |
| | |
| GREENBERG TRAURIG, LLP | *Attorneys for Defendant Kathy Griffin* |
| Adam Siegler | |
| 1840 Century Park East, Suite 1900 | |
| Los Angeles, California 90067 | |
| Tel: (310) 586-7700 | |
| Fax: (310) 586 7800 | |
| sieglera@gtlaw.com | |

*Admitted Pro Hac Vice*

# PRELIMINARY STATEMENT

Defendant Kathy Griffin respectfully submits this brief in response to the opposing memorandum of law filed by Plaintiffs Samuel and Jill Johnson[1] and in further support of her motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), or alternatively, 12(b)(6). Ms. Griffin also seeks dismissal pursuant to the Tennessee Public Participation Act.

Plaintiffs cannot stave off dismissal of their mélange of tort claims as defectively pleaded. It does not matter what label is affixed to their claim—whether dressed up as tortious interference, emotional distress, invasion of privacy, *prima facie* tort, or negligence—or that they did not assert a defamation claim. All of the Complaint's claims are grounded in the expressive content and communicative impact of the three Twitter statements at issue. What does matter, therefore, is the content of Ms. Griffin's speech — what she *actually said*. If the challenged tweets are protected under the First Amendment, then all of the Complaint's counts must be dismissed, across-the-board. Try as they might, Plaintiffs cannot evade this longstanding constitutional principle, which controls here notwithstanding the absence of a defamation claim.

Yet that is precisely what Plaintiffs attempt to do, going so far as to claim that the "First Amendment is not relevant to this matter." (Pls. Br. 17) As set forth more fully below, however, this astonishing assertion cannot be reconciled with free speech guarantees that command rejection of the Complaint's speech-based tort claims. Plaintiffs have shown nothing that supports liability.

The Court, however, need not reach the merits of this dispute because it lacks personal jurisdiction over Ms. Griffin. Plaintiffs' arguments attempting to overcome this threshold barrier demand a radical expansion of specific jurisdiction at odds with established precedent that, if

---

[1] Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss filed on August 19, 2022 [Dkt. No. 29] is cited herein by page as "(Pls. Br.____)."

accepted, would throw the doors open for social media commentators to face suit in any and all jurisdictions. Because Ms. Griffin lacks any substantial connection to this District and did nothing to target an audience in Tennessee, Plaintiffs are forced to advocate an unduly elastic notion of personal jurisdiction that, at least for online publishers, would demolish traditional due process limitations on a forum's adjudicative authority over a nonresident defendant. There is no basis for abandoning such constitutional protections here.

## ARGUMENT

### I. MS. GRIFFIN CANNOT BE SUED IN THIS DISTRICT BASED ON TWEETS ACCESSIBLE TO A NATIONAL AUDIENCE COMMENTING ON A MATTER OF LEGITIMATE PUBLIC INTEREST

Ms. Griffin established in her opening brief that, under settled Sixth Circuit law, her social media posts are an insufficient basis for the Court to exercise personal jurisdiction over her. Plaintiffs have come forward with no new jurisdictional facts, and only offer arguments that have been resoundingly rejected by the Sixth Circuit and should be rejected here.

### A. Plaintiffs Abandoned Any General Personal Jurisdiction Claim.

Plaintiffs do not challenge Ms. Griffin's argument that general jurisdiction is lacking over her, and instead focus on the application of specific jurisdiction in their brief. (Pls. Br. 4) The parties thus agree that Ms. Griffin is not subject to the general jurisdiction of this Court.

### B. Plaintiffs Cannot Establish Specific Personal Jurisdiction.

The parties also agree that an out-of-state defendant is not subject to specific jurisdiction unless she purposefully avails herself of the privilege of acting in the forum state, and that social media posts meant for "national or international audiences" alone do not constitute purposeful availment. (Pls. Br. 9) Plaintiffs endeavor to establish the "something more" that is needed here with the fallacy that Ms. Griffin's tweets should be deemed to have been "expressly aimed" at Tennessee because those tweets identified Tennessee residents and concerned an event occurring

in Tennessee. (*Id.*) However, Plaintiffs' contention is belied by the tweets themselves, which were published to Ms. Griffin's two million plus "followers and the public at large" (Compl. ¶ 6) on a popular social media website available worldwide.

Moreover, Plaintiffs' position—that merely tweeting about a forum resident or forum events is the equivalent of "expressly aiming" statements at the forum—is at odds with every decision to tackle the issue. Indeed, Plaintiffs fail to address any of the numerous cases cited by Ms. Griffin in her opening brief holding that internet speech directed to a national audience, even if it concerns a forum resident and events that occurred in the forum, is an insufficient basis for personal jurisdiction. The Sixth Circuit rejected similar arguments in *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021), which is dispositive here. Significantly, Plaintiffs attempt to distinguish the *Blessing* decision only as it relates to the application of Tenn. Code Ann. § 20-2-223(a)(4) (Pls. Br. 13), a matter that is irrelevant to this motion.

As predicted, Plaintiffs rely primarily on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), which did not involve social media comments but rather an allegedly defamatory newspaper article. Plaintiffs mischaracterize the *Calder* decision when they claim that the Supreme Court found jurisdiction was proper solely "because the defendants 'expressly aimed' their statements at California and knew the 'brunt of the harm' would be borne there.'" (Pls. Br. 6) Plaintiffs ignore other significant factors supporting purposeful availment, including that the *National Enquirer* had its largest circulation in California, the defendants "rel[ied] on phone calls to sources in California for the information contained in the article," and defendants called the plaintiff's home and read a draft of the article to the plaintiff's husband "so as to elicit his comments." *Calder*, 465 U.S. at 785-86; *see also Walden v. Fiore*, 571 U.S. 277, 287 (2014)

(noting that the various contacts the *Calder* defendants had created with California, "and not just with the plaintiff," were "ample").

Even more importantly, unlike here, the *Calder* plaintiff asserted a libel claim. As noted in *Walden,* it was "the reputation-based 'effects' of the alleged libel [that] connected the defendants to California, not just to the plaintiff" and that "[t]he strength of that connection was largely a function of the nature of the libel tort." 571 U.S. at 287. Thus, as recognized in a decision cited by Plaintiffs (Pls. Br. 8), the *Calder* "effects test" only applies when "the defendant committed defamation[.]" *Bd. of Forensic Document Examiners, Inc. v. ABA*, 2017 U.S. Dist. LEXIS 18806, at *24-25 (W.D. Tenn. Feb. 9, 2017).

Plaintiffs are correct when they suggest that the decision in *Santoni v. Mueller*, No. 3:20-cv-975, 2022 WL 97049 (M.D. Tenn. Jan. 10, 2022), "provides a compelling comparison." (Pls. Br. 11). There, the court found the exercise of personal jurisdiction over a former Tennessee resident proper based on her significant contacts with Tennessee, none of which are present here. Specifically, the defendant (1) interacted with plaintiff via Twitter over the course of three years, (2) sought to establish contact with the plaintiff on a different social media site, (3) hacked or attempted to hack into email and other network accounts operated by the plaintiff or members of his family, (4) directed communications to the plaintiff's Tennessee-based employer and its agents and caused the employer to breach its contract with plaintiff, and (5) directed communications, including private messages, to the plaintiff's friends and family. *Santoni*, 2022 WL 97049, at *1. In compelling contrast, Ms. Griffin and Plaintiffs were "complete strangers" (Compl. ¶ 32), Ms. Griffin directed no communications to Plaintiffs or their family or friends, and certainly did not hack into anyone's internet accounts.

Ms. Griffin did not purposefully avail herself of the privilege of conducting activities within Tennessee, and the exercise of jurisdiction over her under these circumstances would violate due process. Accordingly, Plaintiffs' complaint should be dismissed.

## II. THE COMPLAINT'S TORTIOUS INTERFERENCE AND OTHER TORT CLAIMS ARE NOT INVISIBLE TO THE FIRST AMENDMENT

### A. **Ms. Griffin's Commentary on a Matter of Public Interest Cannot, as a Matter of Law, Be an Actionable "Wrong."**

Plaintiffs misapprehend Ms. Griffin's position in claiming that it entails a categorical First Amendment prohibition on "all intentional torts based on speech." (Pls. Br. 15; *see also id*. at 14, 17) This is a straw man argument that, to borrow a phrase, "paints with far too broad a brush." (*Id*. at 15) Ms. Griffin makes no such contention. Rather, her key point is driven by established constitutional principles: certain tort claims with communicative dimensions—in particular, tortious interference claims—are precluded where the speech at issue is otherwise subject to a valid defense under the First Amendment. In short, whether speech is actionable as tortious interference depends on *what* was said.[2] This approach aligns with established precedent and does not, as Plaintiffs erroneously contend, require the wholesale invalidation of Tennessee's intentional tort regime.

Where the speech at issue is not alleged to be false and addresses a legitimate matter of public interest—as Ms. Griffin's tweets unquestionably do here—the First Amendment bars recovery under intentional tort theories, whether sounding in tortious interference or otherwise. Plaintiffs nowhere come to grips with the principle that non-defamatory speech about public affairs cannot be considered wrongful or improper as required to sustain a tortious interference claim, a

---

[2] For example, speech constitutes actionable wrongful interference when it communicates threats of violence or illegal conduct, fraudulent misrepresentations, or defamatory statements. *See Restatement (Second) of Torts*, cmt. c (listing examples of interference). Unlike Ms. Griffin's tweets at issue here, what these types of expression have in common is that they are unprotected by the First Amendment.

,glaring omission from their brief. That principle is dispositive in this case, for the reasons emphasized by the district court and Sixth Circuit, respectively, in *Higgins v. Ky Sports Radio, LLC*:

> Defendants' speech, broadcast in various forms on radio, television, and the internet, involved matters of public concern. Thus the speech enjoys special protection and the First Amendment prevents the Plaintiffs from using tort actions to silence and punish the Defendants for engaging in protected speech.

2019 WL 1290870, at *1 (E.D.Ky. Mar. 20, 2019).

> Perceived missteps in the public eye these days all too often unleash torrents of anonymous online hate. One can hardly blame the victim of such onslaughts for wanting redress. Or blame him for taking aim at the only members of the mob with faces: pundits like [defendants] who at times took too much glee in reporting on the misery of others. But a gulf lies between commenting on harassment and causing it. And in that respect, the First Amendment protects the rights of sports radio talk show hosts just as it protects the rights of presidents.

915 F.3d 728, 740 (6th Cir. 2020).

So too here, where the First Amendment protects the rights of a "stand-up comedian" (Pls. Br. 4) to speak out on an incident that generated public controversy in the Nashville community and beyond—just as it protects the ability of Sam Johnson to defend his conduct on social media and through press interviews. *See, e.g.*, https://www.williamsonhomepage.com/franklin/franklin-ceo-fired-after-altercation-with-teen-featured-on-fox-nations-canceled-in-the-usa/article_d526a532-eafe-11eb-ae6b-7ff96a28b466.html. As it did with respect to the husband-and-wife plaintiffs in *Higgins*, "[t]he First Amendment bars the theory and the claims on this record." 951 F.3d at 733.

### B. Plaintiffs' Failure to Identify Any False Statements of Fact Defeats the Complaint's Tort Claims.

Plaintiffs admit, as they must, that their "tort claims against Ms. Griffin do not include any allegations of false and defamatory statements." (Pls. Br. 17) This admission is fatal to the Complaint which, at a minimum, must adequately allege falsity. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (speech-based intentional tort cause of action must satisfy First Amendment

requirements, including proof of falsity and actual malice); *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 579-80 (8th Cir. 2016) (without alleged falsity, a "tortious interference claim must [ ] fail because the plaintiff cannot establish an absence of justification as a matter of law") (applying Missouri law) (citation and internal quotations omitted); *Owens v. Lead Stories, LLC*, 2021 WL 3076686, at *53 (Del. Super. Ct. July 20, 2021) ("As Plaintiffs do not claim that *USA Today*'s article is factually false, Plaintiffs fail to plead that the alleged interference is improper as *USA Today*'s article is protected by the First Amendment."), *aff'd*, 273 A.3d 275 (Table) (Del. 2022).

Plaintiffs cannot escape the constitutional limitations requiring the dismissal of their speech-based tort claims by claiming that the First Amendment applies only where a plaintiff has asserted a defamation claim. (Pls. Br. 15-18) Contrary to Plaintiffs' contention, this is not where the law draws the "line." (*Id*. at 16) This notion would allow any plaintiff to circumvent First Amendment restrictions by the simple expedient of pleading non-defamation speech-based tort claims — in Plaintiffs' own words, to "make an 'end run' around defamation law by pleading for defamation-like damages to reputation but naming other torts." (Pls. Br. 16) That is exactly what Plaintiffs are seeking to do here, and exactly what is proscribed by *Hustler Magazine* and its progeny. If accepted, Plaintiffs' theory would render actionable topical commentary on matters of general public interest—speech endowed with "special protection" under the First Amendment. *Snyder v. Phelps*, 526 U.S. 443, 458 (2011).

In the final analysis, because Ms. Griffin's tweets—personal observations that are not objectively verifiable—are insulated from liability under the First Amendment from a defamation claim (which Plaintiffs did not even bother to allege), the identical statements must also be shielded

from liability under a tortious interference or any other derivative claim.³ Plaintiffs do not get seven different versions of the First Amendment by pleading seven different causes of action.

### C. National Precedent Stands Overwhelmingly Against Plaintiffs.

Plaintiffs have presented no decision by any federal or state court, from anywhere in the country, holding that statements immunized from defamation liability under the First Amendment may nonetheless be actionable when the *same* statements, without more, are alleged to constitute the predicate for tortious interference with contract—or any other tort, for that matter.⁴ That is

---

³ Indeed, the law review article cited by Plaintiffs at page 15 of their brief makes this very point: "[t]he theory here is that 'if privileged for one purpose, [the statement] must be privileged for all others.'" Steven W. Feldman, *Tortious Interference With Contract in Tennessee: A Practitioner's Guide*, 31 U. MEM. L. REV. 281, 324 (2001) (footnote and citations omitted). Thus, if the speech at issue is privileged from a defamation claim, it is privileged from all other tort claims—irrespective of whether a defamation claim was asserted. Further, and in contravention of Plaintiffs' argument, the commentator recognizes that the First Amendment does not provide a defense against tortious interference with contract only "*where the proscribed activity relates primarily to improper conduct, and not speech.*" *Id*. at 329. This recognition compels dismissal of the Complaint, which does not challenge any improper *conduct* by Ms. Griffin, but only her *speech* consisting of three tweets published in less than 24 hours.

⁴ In contrast, countless cases, recognizing that First Amendment protection does not depend on the label given the stated cause of action, have ruled that such liability may *not* be imposed. *Resolute Forest Products, Inc. v. Greenpeace Int'l*, 302 F.Supp.3d 1005, 1016 (N.D. Cal. 2017) ("Therefore, claims which are similar to defamation, such as tortious interference with contractual or prospective relationships 'are subject to the same first amendment requirements that govern actions for defamation.'"), *quoting Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990); *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 973 (3d Cir. 1985) (unless defendants "can be found liable for defamation, the intentional interference with contractual relations count is not actionable"); *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union*, Local 655, 39 F.3d 191, 196 (8th Cir. 1994) (constitutional requirements for defamation "must equally be met for a tortious interference claim based on the same conduct or statements;" otherwise "a plaintiff may . . . avoid the protection afforded by the Constitution . . . merely by the use of creative pleading"); *Med. Lab. Mgmt. Consultants v. Am. Broadcasting Cos.*, 306 F.3d 806, 821 (9th Cir. 2002) (tortious interference causes of action are subject to First Amendment requirements); *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (applying *Unelko*'s holding to actions for intentional interference with economic relationships and for prospective economic advantage); *Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*, 945 F.Supp. 220, 224 (D. Kan. 1996) ("the court agrees with defendant that the letters in this circumstance are protected free speech and cannot form a basis for plaintiff's tortious interference claim"); *Nat'l Org. for Women, Inc. v. Scheidler*, 1997 WL 610782, at *31 (N.D. Ill. Sept. 23, 1997) ("The court therefore concludes that the application of the state law of tortious interference with contractual relations to [defendant's] conduct in this case would violate the First Amendment.").

because there is none. And the one-sidedness of the law is no surprise. Any other rule would permit the evasion of fundamental free speech principles.

**III. MS. GRIFFIN'S SPEECH IN THE "MODERN PUBLIC SQUARE" DID NOT "DOX" PLAINTIFFS AND CANNOT BE RENDERED ACTIONABLE UNDER COLLATERAL TORT THEORIES**

In assessing Ms. Griffin's tweets it is helpful to distinguish between what they *do not* say, and what they *do* say. Starting with the former, they did not amount to a "doxing campaign" against Plaintiffs. (Pls. Br. 3) She did not publish their "personal addresses and contact information" (*id*. at 4), let alone threaten, harass, or urge violence against them, or ask anyone to break the law. Her speech was not fraudulent, misleading, or commercial, or remotely close to any type of expression potentially actionable under tort law.

Turning to what Ms. Griffin *did* say, she expressed her opinion that Sam Johnson's public conduct deserved criticism and merited his removal from VisuWell's Board. Her tweets were communicative—an invitation, and perhaps an exhortation, to condemn his behavior in the "modern public square" of social media. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1732 (2017); *see also id*. at 1738 (acknowledging that the exchange of information on social media is "integral to the fabric of our modern society and culture" and merits full constitutional protection). It is consistent with democratic public discourse, and protected under the First Amendment, to express the belief that another citizen's actions should make him "online famous." While Plaintiffs are entitled to disagree with that viewpoint, and even to find it offensive, they are not entitled to maintain a lawsuit over it. The whole point of the First Amendment is to leave these social debates to the marketplace of ideas; the nation's courts do not sit to adjudicate such questions. Ms. Griffin's speech may have caused Plaintiffs distress or aroused their contempt. However, the Constitution does not allow her tweets to be exposed to tort liability for those reasons. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit

the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). Indeed, "the point of all speech protection . . . is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish-Amer. Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 574 (1995).

## IV. THE CRIMINAL STATUTES RELIED ON BY PLAINTIFFS DO NOT AUTHORIZE A PRIVATE CAUSE OF ACTION

The Court need not be detained by Plaintiffs' negligence *per se* argument for the simple and straightforward reason that neither Tenn. Code. Ann. § 39-17-308 nor § 39-17-315 authorizes a private cause of action.[5] *Ragland v. F & M Koz, Inc.*, No. 221-CV-02530-TLP-CGC, 2022 WL 945317, at *4-5 (W.D. Tenn. Mar. 29, 2022) (granting motion to dismiss because "individuals have no private right of action" under Tenn. Code Ann. § 39-17-308); *Molthan v. Vanderbilt Univ.*, No. 3:17-CV-00706, 2017 WL 1489099, at *3 (M.D. Tenn. Apr. 26, 2017) (dismissing claims based on state criminal statutes, including § 39-17-308 and § 39-17-315, because "they do not create private causes of action").

Putting aside that Ms. Griffin's tweets neither harassed nor stalked Plaintiffs under the elements of those statutes, their legal argument is simply wrong.

## CONCLUSION

Based on the foregoing reasons and those in her opening brief, Defendant Kathy Griffin respectfully requests that the Court grant her motion and enter an order dismissing the Complaint for lack of personal jurisdiction, or alternatively, for failure to state a claim and/or pursuant to the TPPA, together with such other and further relief as the Court deems just and proper.

---

[5] The case Plaintiffs cite for the standard negligence *per se* elements actually dismissed such claims alleging violations of Tennessee's official misconduct law (Tenn. Code Ann. § 39-16-402) because that provision, "a criminal statute, does not provide a private right of action and does not establish a standard of care for purposes of a negligence *per se* claim." *Slowik v. Lambert*, 529 F.Supp.3d 756, 765-66 (E.D. Tenn. 2021).

Dated: September 2, 2022

| | |
|---|---|
| GREENBERG TRAURIG, LLP<br>Michael J. Grygiel<br>Cynthia E. Neidl<br>54 State Street, 6th Floor<br>Albany, New York 12207<br>Tel: (518) 689-1400<br>Fax: (518) 689-1499<br>grygielm@gtlaw.com<br>neidlc@gtlaw.com<br><br>GREENBERG TRAURIG, LLP<br>Adam Siegler<br>1840 Century Park East, Suite 1900<br>Los Angeles, California 90067<br>Tel: (310) 586-7700<br>Fax: (310) 586 7800<br>sieglera@gtlaw.com<br><br>*Admitted pro hac vice* | WALLER LANSDEN DORTCH & DAVIS, LLP<br><br>by:  /s/ Robb S. Harvey<br>   Robb Harvey (TN Bar No. 01159)<br>   511 Union Street, Suite 2700<br>   Nashville, Tennessee 37219<br>   Tel: (615) 850-8859<br>   Fax: (615) 244-6804<br>   robb.harvey@wallerlaw.com<br><br><br><br>*Attorneys for Defendant Kathy Griffin* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2022, a copy of the foregoing was filed electronically using the Court's Electronic Case Filing (ECF) system. Notice of this filing is expected to be sent by operation of the Court's ECF system to the following counsel of record:

Todd V. McMurtry
J. Will Huber
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
tmcmurty@hemmerlaw.com
whuber@hemmerlaw.com

Lyndsay Smith
SMITH, PLC
311 22nd Avenue North
Nashville, Tennessee 37203
lsmith@smith-plc.com

  /s/ Robb S. Harvey