# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SAMUEL JOHNSON, ET AL., | ) |
| Plaintiffs, | ) |
| | ) NO. 3:22-cv-00295 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| KATHY GRIFFIN, | ) MAGISTRATE JUDGE HOLMES |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant Kathy Griffin's ("Griffin") Motion to Dismiss the Complaint (Doc. No. 18). Plaintiffs Samual Johnson and Jill Johnson filed a response in opposition (Doc. No. 29), and Griffin filed a reply (Doc. No. 30). For the reasons discussed below, the motion (Doc. No. 18) will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that on April 24, 2021, Plaintiff Samuel Johnson was at the Harpeth Hotel's 1799 Restaurant in Franklin, Tennessee. (Doc. No. 1 at ¶ 47). Mr. Johnson contends that a group of teenagers dressed for prom were also at the Harpeth Hotel. (*Id.* at ¶¶ 52-54). An incident occurred at the hotel between Johnson and some of the prom-goers. (*Id.* at ¶¶ 67-70). One of the teenagers videoed the incident on their cellphone and posted it to their personal TikTok account. (*Id.* at ¶¶ 71, 76). TikTok removed the video from its site, but before it was removed, the video was downloaded and posted on other social media platforms, including Twitter, Reddit, and LinkedIn. (*Id.* at ¶ 77).

On April 26, 2021, Griffin republished the video on Twitter and stated "If this is Sam Johnson in Nashville, Tennessee, the CEO of @VisuWell, healthcare-tech-growth strategist, married to Jill Johnson where they may reside in Franklin, Tennessee, it seems like he's dying to

be online famous." (*Id.* at ¶ 81). Plaintiffs allege that Griffin's tweet republishing the video caused it to go viral. (*Id.* at ¶ 83). After Griffin published her first tweet, Griffin responded to a comment posted by the teenager who videoed the incident and stated that she was "proud to be any [sic] ally" and "[l]et me know if there's anything I can do to help." (*Id.* at ¶ 83).

Later that day, Griffin published another tweet attaching two images of Mr. Johnson's face and writing: "Who is? THIS [sic] Sam Johnson of Franklin Tennessee [sic]?" (*Id.* at ¶ 86).

On April 26, 2021, VisuWell published the following statements, among others:

> We unequivocally condemn the behavior exhibited by Sam Johnson in a recent video widely circulated on social media.
>
> After investigating the matter and speaking to individuals involved, the VisuWell BOD has chosen to terminate Mr. Johnson from his position as CEO, effective immediately.

(*Id.* at 88). Later that same day, Griffin published another statement that "the nation will remain vigilant" and asked VisuWell if Mr. Johnson had been removed from his position on the Board of Directors. (*Id.* at ¶ 89). VisuWell replied to Griffin's post and stated "terminated." (*Id.* at ¶ 90). The next day, on April 27, 2021, VisuWell published another post that stated "Mr. Johnson is no longer employed by VisuWell in any capacity." (*Id.* at ¶ 91). Plaintiffs contend that VisuWell officially terminated Mr. Johnson's employment contract on April 26, 2021.

Plaintiffs allege that after Griffin posted the video, they received "countless online threats – including threats of rape and death – as a foreseeable and proximate result of Ms. Griffin's call-to-action to make Mr. and Mrs. Johnson 'online famous'." (*Id.* at ¶ 101). Plaintiffs bring claims against Griffin for tortious interference with employment relations, common law tortious interference with contractual relations, statutory tortious interference with contractual relations, intentional infliction of emotional distress, intrusion upon seclusion, prima facie tort, and negligence per se.

2

In March 2023, the Court ruled that it did not have personal jurisdiction over Griffin and granted Griffin's Motion to Dismiss. The Plaintiffs subsequently appealed that ruling, and the Sixth Circuit Court of Appeals held that the Court has personal jurisdiction over Griffin.

Defendant subsequently filed a motion to renew her motion to dismiss (Doc. No. 40), which the Court granted. As the Sixth Circuit Court of Appeals has determined that the Court has personal jurisdiction over Griffin, the Court need not address the parties' arguments regarding personal jurisdiction and instead will address Griffin's argument that Plaintiffs fail to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*  In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

Further "a motion to dismiss under Rule 12(b)(6) is generally not the appropriate vehicle to dismiss a claim based on an affirmative defense" because "as with all affirmative defenses, it is

the burden of the defendant to prove the elements of the defense." *Mixon v. Trott L., P.C.*, No. 19-1366, 2019 WL 4943761, at *2 (6th Cir. 2019). A plaintiff typically does not have to anticipate or negate an affirmative defense to survive a motion to dismiss. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, an affirmative defense can be the basis for dismissal under Rule 12(b)(6) if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citation omitted).

### III. ANALYSIS

**A. The First Amendment**

Griffin argues that all of Plaintiffs' claims should be dismissed under the First Amendment. While speech about public concerns is often entitled to "special protection," for matters of purely private significance, First Amendment protections are "often less rigorous." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("'[N]ot all speech is of equal First Amendment importance,' however, and where matters of purely private significance are at issue, First Amendment protections are often less rigorous") (internal citations omitted).

Here, Griffin seeks dismissal of Plaintiffs' tort claims on the basis that her speech was a matter of public concern. (Doc. No. 19 at PageID # 143). Specifically, without explaining how or why, Griffin asserts that her social media statements unquestionably addressed a matter of public concern [and are therefore] entitled to "special protection" under the First Amendment." (Doc. No. 19 at PageID # 154) (citation omitted).

Griffin then relies on *Higgins v. Ky Sports Radio* to support her First Amendment argument. 951 F.3d 728 (6th Cir. 2020). However, a review and application of the Sixth Circuit opinion in that case leads this Court to the opposite conclusion. *Higgins* involved tort claims

4

against a sports radio show – *i.e.*, a media outlet – concerning criticism of a college basketball referee following a loss by the University of Kentucky men's basketball team in the Elite Eight (*i.e.*, quarterfinal) round of the NCAA tournament. The court began by discussing the important question of whether the speech at issue involved a "public or private concern." *Id.* at 734 (internal citation omitted).

The *Higgins* court defines a "public concern" as "'[t]he subject of legitimate news interest' or 'a subject of general interest and of value and concern to the public.'" *Id.* (internal citation omitted). Further, "[n]o bright line separates [public from private concerns]. Courts instead look to decisions as guideposts, assessing how the 'content, form, and context' of the speech compare to the speech at issue in other cases 'as revealed by the whole record.'" *Id.* (internal citation omitted). The court then provided a detailed explanation as to why commentary about referees in public sports competition has long been viewed as a matter of "public concern" in this nation's history. *Id.* at 334-336.

Importantly, the *Higgins* court also noted that a defendant sued for its speech cannot "'by its own conduct' make 'the claimant a public figure.'" *Id.* at 736 (internal citation omitted). Turning to this case, accepting Plaintiffs' allegations as true, Griffin's public statements did not involve a subject of "legitimate news interest" or one of "concern to the public." Instead, Plaintiffs allege not that Griffin made false or defamatory statements, but rather that Griffin provided commentary about Mr. Johnson resulting in damages under a variety of tort theories. In that respect, this case is similar to *Higgins*, but the similarities end there.

Here, Plaintiffs allege that Griffin caused an edited video clip to "go viral" and added her own commentary; as noted above, the clip involved interactions between Mr. Johnson and teenage prom-goers in a Franklin, Tennessee hotel lobby. Plaintiffs allege that the video clip was removed

5

from the original social media platform, TikTok, only to be included later by Griffin's Twitter account, along with her commentary.

This case is different from *Higgins* in several respects. *Higgins* involved a radio station show commenting about a college basketball referee's performance in a high-profile tournament game; this case involves a non-media person's comments about an interaction among non-public figures in a hotel lobby. As alleged by Plaintiffs, but for the teenagers uploading a video clip and Griffin's re-publication of that clip, this interaction among patrons at a business would have received little-to-no notice. And as the *Higgins* court noted, the person sued for her speech cannot make the subject of the speech a public figure – or a public concern – by that person's own conduct. *Higgins*, 951 F.3d at 736. Accordingly, under the Rule 12(b)(6) standard, Griffin's argument that all of Plaintiffs' claims are barred under the First Amendment fails and does not warrant dismissal.

**B. Specific Claims**

    1. Tortious Interference

"Tortious interference with a contract requires proof of the following elements: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification or privilege; and (5) resulting damages." *Franklin Tractor Sales v. New Holland N. Am., Inc.*, 106 F. App'x 342, 344 (6th Cir. 2004) (internal citation omitted). "Tortious interference with a business relationship has similar elements, but occurs when the result of the improper interference is not a breach of contract, but the refusal of a third party to enter into or continue a business relationship with the plaintiff." *Id.* (internal citation omitted).

For the reasons stated above, Griffin's First Amendment arguments seeking dismissal of Plaintiffs' tortious interference claims fail and do not warrant dismissal of those claims. Griffin's

second argument against the tortious interference claims – that the Complaint fails to plead that Griffin knew of Mr. Johnson's employment by VisuWell – also fails because Plaintiffs have pleaded facts concerning the content of Griffin's tweets sufficient to demonstrate that she had knowledge of that business relationship. (Doc. No. 1 at ¶ 85).

2. Intentional Infliction of Emotional Distress (IIED)

"To prevail on a claim for IIED, a plaintiff must demonstrate: '(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff.'" *Armstrong v. Shirvell*, 596 F. App'x 433, 451 (6th Cir. 2015) (internal citations omitted).

Here, Griffin also seeks dismissal of Plaintiffs' IIED claim by asserting that Plaintiffs failed to plead that they missed work or suffered any other actionable consequences from Griffin's conduct. The Court disagrees. (Doc. No. 1 at ¶¶ 99-102). Plaintiffs allege in the Complaint that they "received countless online threats – including threats of rape and death – as a foreseeable and proximate result of Ms. Griffin's call-to-action to make Mr. and Mrs. Johnson 'online famous'" and that "Mrs. Johnson's business suffered lost profits and other damages as a result of Ms. Griffin's conduct", among other allegations. (*Id.* at ¶¶ 101, 103). Accordingly, accepting as true the allegations in the Complaint, the Court finds that Plaintiffs have sufficiently stated allegations in the Complaint to support this claim.

3. Intrusion Upon Seclusion

"An intrusion upon seclusion claim requires a plaintiff to show: (1) an intentional intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, and (3) that the intrusion would be highly offensive to a reasonable person." *Wiles v. Ascom Transp. Sys., Inc.*, 478 F. App'x 283, 293–94 (6th Cir. 2012).

Here, Griffin argues that the content of her statements cannot, as a matter of law, constitute "invasion of privacy" of Mrs. Johnson. The Court disagrees. Accepting the allegations in the Complaint as true – which include the circumstances and context surrounding Griffin's identification of Mrs. Johnson – and drawing all inferences in Plaintiffs' favor, the Court finds that Plaintiffs have sufficiently pleaded allegations in support of their claim for intrusion upon seclusion.

4. <u>Prima Facie Tort</u>

"[A] claim for prima facie tort exists only 'if a party breaches a duty which he owes to another independently of [a] contract.'" *Cont'l Cas. Co. v. Tyson Foods, Inc.*, No. 1:15-CV-20, 2017 WL 11180252, at *9 (E.D. Tenn. Nov. 13, 2017) (internal citation omitted). "'It has been considered that, prima facie, the intentional infliction of temporal damages is a cause of action, which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape.'" *Large v. Dick*, 207 Tenn. 664, 667, 343 S.W.2d 693, 694 (1960) (internal citation omitted).

Griffin contends that this claim should be dismissed because her statements are "privileged and justified as public affairs commentary protected at the core of the First Amendment" and relies on *Higgins* in support. (Doc. No. 19 at PageID # 164). The Court disagrees. Taking the allegations in Plaintiffs' complaint as true, the allegations pleaded by Plaintiffs are sufficient to withstand dismissal of this claim.

5. <u>Negligence Per Se</u>

"In order to recover under a theory of negligence per se, [Plaintiff] must establish three elements": (1) "[Defendant] must have violated a public statute that imposes a duty or prohibition for the benefit of a person or the public"; (2) "the injured plaintiff must be within the class of

persons intended to benefit from or be protected by the statute"; and (3) "the injured plaintiff must show that the negligence was the proximate cause of the injury." *Gritzmacher v. Danek Med., Inc.*, No. 96-3246, 1999 WL 33512267, at *8 (W.D. Tenn. Apr. 19, 1999) (internal citations omitted).

Griffin contends that this claim should be dismissed because Plaintiffs fail to allege specific facts that amount a breach of duty owed to Plaintiffs and that her statements are protected by the First Amendment. The Court is unpersuaded and finds that the allegations in Plaintiffs' complaint are sufficient to withstand dismissal of this claim.

## IV.  CONCLUSION

For the reasons stated above, Griffin's Motion to Dismiss (Doc. No. 18) will be **DENIED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE